ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee, v. DYE, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25324. Decided December 15, 1960.

18

Mr. *Arthur J. Stern,* for plaintiff-appellee.
Mr. *Edward J. Kirk,* for defendant-appellant.

For further history see *Omnibus Index* in bound volume.

SKEEL, J. This appeal comes to this court on questions of law from a judgment entered by the Common Pleas Court of Cuyahoga County for the plaintiff on a motion seeking summary judgment under the provisions of Section 2311.041, Revised Code. This section provides the procedure by which a motion for summary judgment is to be presented for determination by the court.

The questions of error in this case must be determined from the uncontroverted allegations of the pleadings and the answers to the interrogatories since a bill of exceptions was not filed. The plaintiff's petition sets out that the defendant was involved in an automobile collision with one David W. Victor. The accident occurred on October 16, 1958. It is alleged that the plaintiff had a contract of collision insurance with the defendant and that in accordance with the terms and promises of such policy, it paid the defendant for damages to his automobile resulting from such collision, the amount paid being eight hundred sixty-six dollars.

It is further alleged that the defendant, on March 9, 1959, entered into a settlement with David W. Victor and executed a full and complete release of all claims against David W. Victor growing out of the collision of October 16, contrary to his policy contract with the plaintiff, and that there is, there-

fore, due to plaintiff the amount it had paid the defendant as a part of defendant's damages.

The answer of the defendant Dye alleges that at his request the Insurance Company of North America and David W. Victor, a minor, were made new parties defendant. The answer admits that plaintiff is in the insurance business, that it issued a policy of collision insurance on defendant's automobile, that there was a collision whereby this answering defendant suffered loss under the terms of the policy of insurance as alleged in plaintiff's petition, and that the plaintiff paid this answering defendant the amount pleaded.

The answer denies that this answering defendant compromised any portion of plaintiff's subrogation claim as a part of his settlement, denies any indebtedness to plaintiff, and concludes the answer by setting out a general denial of all allegations of the petition except as to matters "expressly admitted to be true."

A cross-petition was filed setting out in detail the settlement by this defendant of his claim for personal injuries and property damage with the new defendant David W. Victor. On motion of the new defendants, The Insurance Company of North America and David W. Victor, a minor, by his guardian ad litem, Albert J. Williams, to vacate the entry making them new parties defendant and to strike, the cross-petition of defendant Dye was filed and upon hearing granted.

The plaintiff filed twelve interrogatories which were answered under oath by the defendant. The interrogatories and answers were, in part, as follows:

1) At the time of compromising your claim against David W. Victor, did you read the release before you signed it?

Answer: Yes.

2) If your answer to Interrogatory No. 1 is yes, did the release contain any reservation of rights of Allstate Insurance Company?

Answer: No.

\* \* \*

7) What was the amount of settlement with David W. Victor?

Answer: Three thousand dollars ($3,000.00)

8) What was the amount of damage to your automobile?

Answer: Nine Hundred Sixteen Dollars ($916.00).

\* \* \*

11) Were you reimbursed for any portion of your property damage by David W. Victor and/or Insurance Company of North America?

Answer: Yes.

12) If your answer to Interrogatory No. 11 is yes, in what amount?

Answer: Fifty Dollars ($50.00).

As was indicated earlier in this opinion, we have not been favored with a bill of exceptions of the trial proceedings on the hearing of the motion for a summary judgment. The journal entry entering summary judgment, in part, provides:

"The Court, having given consideration to the foregoing Motion for Summary Judgment, the oral arguments, the pleadings and the Briefs of the parties, finds that the motion of plaintiff for Summary Judgment is well taken."

The motion for summary judgment has attached to it a photostatic copy of a full and complete release of all claims of George Dye against David W. Victor to the date of the release, particularly referring to the accident with David W. Victor, supported by an affidavit that it was a true copy of the release and bearing what appears to be the signature of "George Dye" authenticating the release, which signature is identical to the signature of George Dye, verifying the defendant's answer and cross-petition. There are no affidavits attached to the motion other than the one attached to the photostatic copy of the release, and the transcript does not show the filing of other affidavits with the motion. The case must, therefore, have been tried on other evidence presented to the trial court on the hearing of the motion for summary judgment. However, without a bill of exceptions, the release and affidavit supporting it, attached to the motion, and such other evidence as might have been produced, is not before this court in this proceeding. A bill of exceptions is absolutely necessary to put upon the record, in a review on questions of law, the evidence presented upon the hearing of a motion which is tried either by affidavit, by documents attached to pleadings, or by stipulations, or other evidence to be considered in passing on a motion for summary judgment. The case of *Willett* v. *New York Central Rd. Co.*, 73 Ohio App., 59, 54 N. E. 2d, 317, analyzes the circumstances under which affidavits, provided for by law to be used as evidence, can only be considered by a reviewing court when incorporated into a bill of exceptions.

One of the appellant's assignment of errors in the above case was that the court erred in overruling defendant's motion for new trial. One ground alleged in such motion was misconduct on the part of a juror. Several affidavits were filed with the motion for new trial. They were referred to in the motion which contained the statements that the affidavits were made a part of the motion. The order of the court overruling the motion made no reference to the affidavits. The issue in the case was whether these affidavits bearing the file mark of the clerk of the court were a part of the record in the absence of a bill of exceptions. The court held in paragraph one of the syllabus as follows:

"Affidavits, filed with the clerk in support of a motion for a new trial on the ground of misconduct of jurors, as authorized by Section 11579, General Code, are not a part of the record and cannot be considered on appeal in the absence of a bill of exceptions incorporating them."

In its discussion of the case, the court went on to say:

"It seems clear that the mere filing of certain affidavits with the clerk makes them a part of the record for the intended purpose. Other affidavits, though filed, are not a part of the record, unless made so by a bill of exceptions.

"Without attempting to catalogue all types of affidavits, it seems safe to say that the general rule is that whenever the sole office or purpose of the affirmations contained in an affidavit is to prove or disprove an issue of fact, such affidavit falls within the rule that evidence is no part of the record unless made so by a bill of exceptions.

"Where, however, such affidavit serves some other purpose, such as an affidavit for publication, an affidavit to secure the issuance of an attachment, or some other process by the clerk, or where it takes the place of a pleading, it is a part of the record for what it purports to be, regardless of the truth of its affirmations."

The notice of appeal sets out that defendant's appeal is from the order of March 3, 1960, dismissing new party defendants from the case and from the judgment rendered by the Common Pleas Court on the 28th day of June, 1960, which is the day the summary judgment was entered on the journal of the court.

The only assignment of error presented deals with the

granting of the motion for summary judgment. Any claim of error based on the granting of the motion to vacate the entry making new parties defendant and striking the cross-petition from the files has, therefore, been abandoned.

Without a bill of exceptions of the proceedings on the trial of the motion for summary judgment, this court is unable to pass on the question of whether or not the plaintiff clearly established that there were no issues of fact requiring trial on the merits, presented by the pleadings, interrogatories, and the evidence (by affidavits or otherwise). The trial court must have concluded that, on the evidence presented to it, the undisputed facts, clearly established, entitled plaintiff to a summary judgment and we must assume the court decided that question correctly.

This leaves for our consideration the question of whether the admitted allegations of the pleadings and the interrogatories as answered by the defendant require a different conclusion.

There is no dispute but that the plaintiff, under its contract of insurance with the defendant, paid to the defendant eight hundred and sixty-six dollars which was the amount of the damage to defendant's automobile caused by the collision with the automobile of David W. Victor on the night of October 16 or early morning of October 17, 1958, less fifty dollars, which was deducted as provided by the deductible provisions of the policy. There is likewise no dispute but that the defendant settled his entire claim against David W. Victor by giving him a full release without any reservation of the right of the plaintiff to seek reimbursement against Victor under its subrogation agreement with the defendant.

The defendant had but one cause of action (*Rush* v. *City of Maple Heights*, 167 Ohio St., 221, 147 N. E. 2d, 599), which, if released and settled with the tort-feasor without notice and reservation of the rights of the subrogee, would end for all time any clear right of the subrogee to seek reimbursement on its subrogation agreement. While there is some evidence in the answers to the interrogatories that notice of the settlement with Victor was given to plaintiff after the settlement was concluded and that during the settlement negotiations, Victor was notified that this defendant had made a claim for damage to his automobile against the plaintiff under his policy of collision insurance, a notice to this plaintiff of such settlement after it

had been concluded would have no legal effect on the rights of the parties, nor would notice that a demand had been made on the defendant's insurer for the damage to the automobile without bringing to Victor's knowledge that payment had been received and a subrogation receipt issued in any way reserve to this plaintiff, without legal controversy occasioned by the release, a clear right to be paid the amount expended for damage to defendant's automobile. Such conduct on the part of the defendant was a breach of his obligations to this plaintiff unless it was his purpose to return what the plaintiff had paid to him. And where the defendant has completely settled his claim by giving a release in full to the tort-feasor for his entire damage without a reservation of the rights of this plaintiff as subrogee to the amount of the damage to defendant's automobile, it is clear that the amount received from Victor included the damages to the automobile to which amount (to the extent of eight hundred and sixty-six dollars) the plaintiff was entitled from the defendant as a matter of law. There is not the slightest indication either from the uncontradicted allegations of the pleadings or the answers to the interrogatories that Victor intended to or was given to understand that only a part of a single cause of action against him was being settled. The undisputed allegations of the pleadings and the answers to interrogatories appearing on the face of the record clearly support the judgment of the court in granting the motion for summary judgment.

We are not unmindful of the cases cited by the Supreme Court, beginning on page 339 and continuing through to page 343 of the case of *Vasu* v. *Kohlers, Inc.*, 145 Ohio St., 321, 61 N. E. 2d, 707, which cases hold that a subrogee, to whom a claim for property damage, resulting from the negligence of another, has been assigned after paying the subrogor under an insurance contract when both personal injury and property damage have resulted from the same negligent act may bring a separate action against the tort-feasor for the property damage, and to do so does not constitute a splitting of a single cause of action. On page 342 the court said:

"In line with the trend of modern authority, this court takes the view that an insurer who has paid a property damage claim and has taken a full assignment of the claim as subrogee is a proper party plaintiff to prosecute an action for reimburse-

ment from a defendant whose negligent act caused the damage to the property insured, and that such act and procedure do not constitute the splitting of a cause of action. If, however, the entire claim for property damage is not assigned or transferred to the insurance carrier, the action must be brought in the name of the assured (*Cable* v. *St. Louis Marine Ry. & Dock Co.*, 21 Mo., 133), or jointly by the insurer and the assured (*Pratt* v. *Radford*, 52 Wis., 114, 8 N. W., 606). Otherwise, there would be a clear splitting of the cause of action based upon the property damage claim."

The facts in the case at bar are that not all of the property damage was assigned to the subrogee and that at least a part of such damage was admittedly included in the defendant's settlement with Victor and included in the release. The principle of the right to split causes of action, that is splitting a claim for personal injury and the one for property damage resulting from the same wrongful act as was held in the Kohlers case has been completely repudiated by the Supreme Court in the case of *Rush* v. *City of Maple Heights*, 167 Ohio St., 221, 147 N. E. 2d, 599. In the case of *Holibaugh* v. *Cox*, 167 Ohio St., 340, 148 N. E. 2d, 677, the court said in the first paragraph of the syllabus:

"1. Where an insured is injured by a tort-feasor, is reimbursed for a part of his damages by the insurer and, accordingly, assigns a part of his interest in the claim against the tort-feasor to such insurer, the insured may timely commence an action against the tort-feasor for the full amount of damages resulting from the tort and thereby effect a compliance with the statute of limitations pertaining to such *indivisible chose in action* as to *parties united in interest* with him, but the insurer must be joined as a party united in interest at any stage of the action, where he or the plaintiff so moves or where such issue is raised by the defendant tort-feasor. (Paragraph two of the syllabus of *Cleveland Paint & Color Co.* v. *Bauer Mfg. Co.*, 155 Ohio St., 17, paragraph one of the syllabus of *National Retailers Mutual Ins. Co.* v. *Gross,* 142 Ohio St., 132, and paragraph four of the syllabus of *Lake Erie & Western Rd. Co.* v. *Falk,* 62 Ohio St., 297, approved and followed.)" (Emphasis added.)

The court designates a cause of action resulting from a single tortious act, a part of which has been assigned under a

policy of collision insurance, as an "indivisible cause of action" and the insured and the insurer as parties "united in interest." Under Section 2307.20, Revised Code, all parties united in interest must be joined as plaintiffs or defendants in an action attempting to enforce such interests. The purpose of these citations is to note the confusion that would result in situations where the insured gives a full release (without reservation of the subrogee's right) after assigning, by a subrogation receipt, a part of an "indivisible" cause of action for a part of the damages, to an insurer who has by reason of its assignment a right to seek recoupment from a tort-feasor of the amount paid to the insured under its policy of insurance where the negligence of the alleged tort-feasor proximately causing the damage can be shown, should it be held that after such release is given, the subrogee still retains a right of action against the tort-feasor. There has been held to be some legal justification for permitting a subrogee to seek damages to the extent of his interest in a cause of action where, by contract, he has paid the subrogor some part of his damage even though in permitting such right, a splitting of an otherwise "indivisible" cause of action results and even though such rule is in direct conflict with the statutory requirements of joining all persons united in interest as recognized in the Cox case supra. No legal basis can be found, however, to support the right of a subrogee to maintain an action against a tort-feasor where the subrogor, after assigning a part of his claim to the subrogee, settles his claim against the tort-feasor, which settlement is evidenced by a full release without reservation or notice of the subrogee's interest in an indivisible cause of action.

The record in this case clearly discloses the right of the plaintiff to require the defendant to return the amount paid to him by the plaintiff because of his subsequent settlement with and release of the tort-feasor who negligently caused the damage without reserving and protecting the rights assigned by him to the plaintiff.

Judgment affirmed.

HURD, P. J., KOVACHY, J., concur.